UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>IMS HEALTH, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR**<br>**DECLARATORY JUDGMENT** |

Plaintiffs, Zurich American Insurance Company ("Zurich") and American Guarantee & Liability Insurance Company ("AGLIC"), by way of Complaint for Declaratory Judgment against Defendant, IMS Health, Inc. ("IMS"), allege and say:

## INTRODUCTION

1. This action is brought pursuant to 28 U.S.C. §2201 and §2202 for declaratory judgment to determine the respective rights and obligations of the parties under certain general liability primary and umbrella insurance policies issued to IMS.

2. IMS provided notice to Zurich and AGLIC of an underlying antitrust action entitled *Symphony Health Solutions Corp., et al. v. IMS Health Incorporated*, filed on or around July 24, 2013 in the United States District Court for the Eastern District of Pennsylvania under case no. 13-4290 (the "Underlying Action").

3. IMS has demanded that Zurich and AGLIC defend and potentially indemnify it under certain policies of insurance issued by Zurich and AGLIC.

1

4. Zurich agreed to defend IMS in the Underlying Action, subject to a complete reservation of rights, under its primary policies at issue.

5. The claims in the Underlying Action have given rise, and likely will continue to give rise, to disputes among the parties, including but not limited to disputes regarding: (a) whether IMS is entitled to coverage under the insurance policies issued by Zurich and AGLIC; (b) the existence, scope and extent of coverage available to IMS with respect to the claims in the Underlying Action under the Zurich and AGLIC Policies; (c) the appropriate apportionment and allocation of amounts paid or to be paid for defense and indemnity costs, if any, in connection with the claims in the Underlying Action; and (d) the extent to which Zurich is entitled to recoupment from IMS of defense costs or other sums paid in connection with the claims in the Underlying Action.

## THE PARTIES

6. Plaintiff Zurich is a corporation organized under the laws of the State of New York and engaged in the insurance business with a statutory home office located at One Liberty Plaza, 165 Broadway, 32nd Floor, New York, New York 10006, and a principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196.

7. Plaintiff AGLIC is a New York corporation organized under the laws of the State of New York and engaged in the insurance business with a statutory home office located at One Liberty Plaza, 165 Broadway, 32nd Floor, New York, New York 10006, and a principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196.

8. Upon information and belief, Defendant IMS is a corporation organized under the laws of the State of Delaware with a principal place of business located at 83 Wooster Heights Road, Danbury, Connecticut 06810.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, §2201 and §2202 because: (i) there is an actual controversy between the parties; (ii) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (iii) the matter is between citizens of different states.

10. Venue is proper under 28 U.S.C. §1391 because this is a judicial district in which Defendant IMS resides, and a substantial part of the events giving rise to the claim occurred in this district.

## NATURE OF DISPUTE

### The Underlying Action

11. The Underlying Action is an antitrust action containing allegations against IMS for its alleged unlawful abuse of its monopoly power in pharmaceutical data markets over the course of ten years.

12. The Underlying Action alleges that IMS is the largest pharmaceutical data and analytics company both in the United States and the world.

13. The Underlying Action alleges that IMS has engaged in a series of anticompetitive acts designed to maintain and strengthen its monopoly power in certain markets and to leverage that power to obtain monopoly power in additional markets.

14. The Underlying Action alleges that IMS's actions have harmed competitors, hurt customers and threatened to eliminate any meaningful competition in the relevant markets.

15. Plaintiffs in the Underlying Action seek to recover lost profits that resulted directly from IMS's alleged anti-competitive conduct and to obtain injunctive relief to prevent IMS from continuing to engage in these practices.

16. The Underlying Action sets forth four (4) causes of action against IMS based on violations of the Sherman Act: 1) for unlawful monopolization (Section 2 of the Sherman Act, 15 U.S.C. § 2); 2) for attempted monopolization (Section 2 of the Sherman Act, 15 U.S.C. § 2); 3) for monopoly leveraging (Section 2 of the Sherman Act, 15 U.S.C. § 2); and 4) for unlawful use of exclusionary contracts (Section 1 and Section 2 of the Sherman Act, 15 U.S.C. §§ 1, 2) (collectively, "the Sherman Act claims").

17. The Underlying Action also sets forth two (2) causes of action against IMS for tortious interference with existing and prospective contractual relationships in violation of Pennsylvania Common Law, and unfair competition in violation of Pennsylvania Common Law (collectively, the "Pennsylvania state claims").

18. The Underlying Action seeks a judgment against IMS under Sections 4 and 16 of the Clayton Act, including actual and treble damages, costs, punitive damages and injunctive relief.

## THE INSURANCE POLICIES

### The Zurich Primary Policies

19. Zurich issued the following policies to IMS providing General Liability coverage: GLO 2923479-04, effective June 30, 2003 through June 30, 2004; GLO

4

2923479-05, effective June 30, 2004 through June 30, 2005; GLO 2923479-06, effective June 30, 2005 through June 30, 2006; GLO 2923479-07, effective June 30, 2006 through June 30, 2007; GLO 2923479-08, effective June 30, 2007 through June 30, 2008; GLO 2923479-09, effective June 30, 2008 through June 30, 2009; GLO 2923479-10, effective June 30, 2009 through June 30, 2010; GLO 2923479-11, effective June 30, 2010 through June 30, 2011; and GLO 2923479-12, effective June 30, 2011 through June 30, 2012 (collectively, the "Zurich primary policies").

20. The Zurich primary policies each provide a limit of liability of $1 million for each occurrence, $1 million for personal and advertising injury and $2 million in the general aggregate limit.

21. Subject to applicable deductibles and limits, the Zurich primary policies provide general liability coverage pursuant to Coverage A and Coverage B of the insuring agreements.

22. Under Coverage A, Zurich covers those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies.

23. Under Coverage B, Zurich covers those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which the insurance applies. Coverage B of this insurance applies to "personal and advertising injury" caused by an offense arising out of the insured's business but only if the offense was committed in the "coverage territory" during the policy period.

24. Section V. DEFINITIONS of Zurich primary policy GLO 2923479-04 contains the following definition of "personal and advertising injury":

14. "Personal and advertising injury" means injury including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement";

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

   h. Humiliation and any other damage to the feelings or reputation of a person and any injury to intangible property arising out of these offenses.

25. Section V. DEFINITIONS of Zurich primary policies GLO 2923479-05 through GLO 2923479-12 contains the following definition of "personal and advertising injury":

14. "Personal and advertising injury" means injury including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

  f. The use of another's advertising idea in your "advertisement"; or

  g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

26. The Zurich primary policies contain the following pertinent exclusions applicable to Coverage B:

 **2.** **Exclusions**

 This insurance does not apply to:

  **a.** **Knowing Violation of the Rights of Another**

   "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

  **b.** **Material Published With Knowledge of Falsity**

   "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

  **c.** **Material Published Prior to Policy Period**

   "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

7

        **d.**      **Criminal Acts**

                "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

## The AGLIC Excess Policies

27.    AGLIC issued the following policies to IMS providing Commercial Umbrella Liability coverage: AUC 9375258-00, effective June 30, 2003 through June 30, 2004; AUC 9375258-01, effective June 30, 2004 through June 30, 2005; AUC 9375258-02, effective June 30, 2005 through June 30, 2006; AUC 9375258-03, effective June 30, 2006 through June 30, 2007; AUC 9375258-04, effective June 30, 2007 through June 30, 2008; and AUC 9375258-05, effective June 30, 2008 through June 30, 2009 (collectively, the "AGLIC excess policies").

28.    AGLIC excess policies AUC 9375258-00 through AUC 9375258-05 provide commercial umbrella liability coverage up to their limits of liability under Coverage A for those damages covered by this insurance in excess of the total applicable limits of underlying insurance. The terms and conditions of underlying insurance are with respect to Coverage A made a part of this policy, except with respect to any contrary provision contained in this policy or any provision in this policy for which a similar provision is not contained in underlying insurance. If underlying insurance does not cover damages, for reasons other than exhaustion of applicable limits of insurance by payment of claims, then Coverage A of the umbrella policy will not cover such damages.

29.    AGLIC excess policies AUC 9375258-00 through AUC 9375258-05 provide commercial umbrella liability coverage up to their limits of liability under Coverage B for damages the insured becomes legally obligated to pay by reason of

liability imposed by law or assumed under an insured contract because of bodily injury, property damage, or personal and advertising injury covered by this insurance provided the injury, damage or offense takes place during the policy period of this policy and is caused by an occurrence happening anywhere. Coverage B will not apply to any loss, claim or suit for which insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the limits of underlying insurance.

30. The AGLIC excess policies are subject to various applicable definitions, exclusions and endorsements.

## TENDERS/NOTICE

31. IMS tendered its defense and indemnity with respect to the Underlying Action to Zurich under the Zurich primary policies and to AGLIC under the AGLIC excess policies.

32. By letter dated October 9, 2013, Zurich advised IMS that it agreed to participate in the payment of any reasonable and appropriate defense costs incurred by IMS in the Underlying Action under the Zurich primary policies, subject to a complete reservation of rights, including the right to withdraw from the defense and to seek reimbursement of defense costs if it is later determined that no coverage exists.

33. On October 9, 2013, Zurich also advised IMS that, to the extent that other carriers participate in IMS's defense, Zurich's defense costs would be reduced accordingly.

34. On October 9, 2013, AGLIC also advised IMS that AGLIC has determined that it does not have a present duty to defend and/or indemnify IMS under the AGLIC excess policies, and that it would be premature to define and address any

potential coverage issues until such time as it appears likely that the claims in the Underlying Action will impact the AGLIC excess policies.

35. By letter dated December 19, 2013, IMS wrote to Zurich to acknowledge Zurich's agreement to defend IMS, subject to a complete reservation of rights.

36. Zurich and AGLIC have no duty to defend or indemnify IMS under any coverage part of the Zurich primary policies for the Sherman Act claims. Consequently, Zurich seeks an allocation of costs incurred in the defense of the non-covered claims (the Sherman Act claims) and the potentially covered claims (the Pennsylvania state claims), and reserves its rights to recoup from IMS any payment made for the defense of non-covered claims.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment as to the Zurich Primary Policies)**

37. Zurich repeats and realleges all allegations of the Complaint as if set forth at length herein.

38. Coverage A of the Zurich primary policies affords coverage for any "bodily injury" or "property damage" occurring during the policy period and resulting from an "occurrence".

39. Neither the Sherman Act claims nor the Pennsylvania state claims fall within the coverage grant of Coverage A of the Zurich primary policies because they do not contain allegations of "bodily injury" or "property damage", as these terms are defined in the Zurich primary policies.

40. Neither the Sherman Act claims nor the Pennsylvania state claims contain allegations of an "occurrence" as defined by the Zurich primary policies.

41. Neither the Sherman Act claims nor the Pennsylvania state claims seek damages because of "bodily injury" or "property damage", as these terms are defined in the Zurich primary policies.

42. Therefore, Zurich has no duty to defend or indemnify IMS against the claims in the Underlying Action under Coverage A – Bodily Injury or Property Damage Liability of the Zurich primary policies.

43. Coverage B – Personal and Advertising Injury Liability of the Zurich primary policies states that Zurich "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."

44. The Sherman Act claims do not fall within Coverage B of the Zurich primary policies.

45. Therefore, the Zurich primary policies do not provide coverage to IMS for the Sherman Act claims asserted against it in the Underlying Action.

46. By reason of the foregoing an actual and justiciable controversy exists between Zurich and IMS. Zurich therefore seeks a declaratory judgment that it: (i) owes no duty to defend or indemnify IMS under Coverage A for the claims asserted in the Underlying Action; and (ii) a declaration that Zurich has no duty to defend or indemnify IMS under Coverage B for the Sherman Act claims asserted in the Underlying Action.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Declaratory Judgment as to the Pennsylvania State Claims)

47. Zurich repeats and realleges all allegations of the Complaint as if set forth at length herein.

48. The Zurich primary policies may not provide coverage to IMS for the Pennsylvania state claims because the Zurich primary policies contain an exclusion for "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

49. The Zurich primary policies may not provide coverage to IMS for the Pennsylvania state claims because the Zurich primary policies contain an exclusion for "personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

50. The Zurich primary policies may not provide coverage to IMS for the Pennsylvania state claims because the Zurich primary policies contain an exclusion for "personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

51. The Zurich primary policies may not provide coverage to IMS for the Pennsylvania state claims because the Zurich primary policies contain an exclusion for "personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

52. The Zurich primary policies do not provide coverage for punitive damages.

53. By reason of the foregoing an actual and justiciable controversy exists between Zurich and IMS. Zurich therefore seeks a declaratory judgment on whether it owes a duty to defend and potentially indemnify the Pennsylvania state claims under Coverage B of the Zurich primary policies.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Declaratory Judgment as to the AGLIC Excess Policies)

54. Zurich repeats and realleges all allegations of the Complaint as if set forth at length herein.

55. Coverage A – Excess Follow Form Liability Insurance of the AGLIC excess policies states that "[u]nder Coverage A, we will pay on behalf of the insured, those damages covered by this insurance in excess of the total applicable limits of underlying insurance. The terms and conditions of underlying insurance are with respect to Coverage A made a part of this policy, except with respect to: 1. Any contrary provision contained in this policy; or 2. Any provision in this policy for which a similar provision is not contained in underlying insurance."

56. Coverage A – Excess Follow Form Liability Insurance of the AGLIC excess policies states that "if underlying insurance does not cover damages, for reasons other than exhaustion of applicable limits of insurance by payment of claims, then we will not cover such damages."

57. The AGLIC excess policies are subject to various applicable definitions, exclusions and endorsements.

58. By reason of the foregoing, an actual and justiciable controversy exists between IMS and AGLIC. AGLIC therefore seeks a declaratory judgment that it owes no duty to defend or indemnify IMS against the Sherman Act claims asserted in the Underlying Action and seeks a declaratory judgment on whether it owes a duty to defend and potentially indemnify IMS against the Pennsylvania state claims.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Allocation of Defense Costs Between Covered and Non-Covered Claims)

59. Zurich repeats and realleges all allegations of the Complaint as if set forth at length herein.

60. Zurich has agreed to participate in the defense of IMS against the Pennsylvania state claims in the Underlying Action, subject to a complete reservation of rights, including the right to withdraw from the defense of IMS and/or seek reimbursement of costs incurred in the event of a determination that Zurich had no duty to defend.

61. Zurich has disclaimed any coverage obligation to IMS for the Sherman Act claims.

62. The defense costs incurred for the defense of the Sherman Act claims and defense of the Pennsylvania state law claims can be readily apportioned.

63. IMS advised Zurich that it retained the law firm of Quinn Emanuel Urquhart & Sullivan, LLP to defend the Sherman Act claims.

64. IMS further advised Zurich that it retained the law firm of Pepper Hamilton LLP to defend the Pennsylvania state law claims asserted against IMS, and prosecute IMS's counterclaims asserted in the Underlying Action.

65. By reason of the foregoing an actual and justiciable controversy exists between Zurich and IMS. Zurich therefore seeks a declaratory judgment that the defense costs incurred by IMS can be readily apportioned between the potentially covered Pennsylvania state claims and the non-covered Sherman Act claims and that Zurich has no obligation to pay the defense costs incurred in connection with defense of the non-covered Sherman Act claims.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Equitable Contribution and Recoupment from IMS)

66. Zurich repeats and realleges all allegations of the Complaint as if set forth at length herein.

67. Zurich has paid defense costs to IMS, subject to a full reservation of rights, including the right to recoup defense costs or other sums paid to or on behalf of IMS, should it be determined that coverage is unavailable to IMS for any or all of the claims in the Underlying Action.

68. To the extent that coverage is not available to IMS under the Zurich Policies, or to the extent that Zurich may have paid more than it was obligated to pay or may in the future pay more than it is obligated to pay for the defense of IMS, Zurich is entitled to equitable contribution and reimbursement from IMS.

69. By reason of the foregoing an actual and justiciable controversy exists between Zurich and IMS. Zurich therefore seeks a declaratory judgment that Zurich may recoup any and defense costs and/or other sums paid to or on behalf of IMS in connection with the Underlying Action.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Declaration of Reasonable Defense Counsel's Rates)

70. Zurich repeats and realleges all allegations of the Complaint as if set forth at length herein.

71. IMS has failed to prove that the attorney fee rates it seeks are reasonable and necessary.

72. Zurich and IMS have been unable to negotiate a mutually acceptable rate for attorney's fees.

73. By reason of the foregoing an actual and justiciable controversy exists between Zurich and IMS. Zurich therefore seeks a declaratory judgment as to the reasonableness of the attorney rates charged by defense counsel retained by IMS in the Underlying Action.

**WHEREFORE**, Zurich requests the Court enter judgment as follows:

1. Declaring that Zurich does not have a duty to defend or indemnify IMS for the claims in the Underlying Action under Coverage A of the Zurich primary policies;

2. Declaring that Zurich does not have a duty to defend or indemnify IMS for the Sherman Act claims in the Underlying Action under Coverage B of the Zurich primary policies;

3. Declaring that Zurich does not have a duty to defend or indemnify IMS in the Underlying Action under the AGLIC excess policies;

4. Declaring whether Zurich has a duty to defend or indemnify for the Pennsylvania state claims under Coverage B of the Zurich primary policies.

5. Declaring a proper allocation of IMS's defense costs between the non-covered Sherman Act claims and the potentially covered Pennsylvania state law claims;

6. Declaring reasonable and necessary attorney rates charged by IMS's defense counsel in the Underlying Action;

7. Awarding to Zurich all attorneys' fees, costs, and expenses that it has incurred in prosecuting this action; and

8. For such other and further relief as the Court deems just and proper.

*Attorneys for Plaintiffs*
*Zurich American Insurance Company*
*American Guarantee & Liability Insurance Company*

By: _____
Daniel P. Scapellati, Esq.
Federal Bar No. CT03855
HALLORAN & SAGE, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
scapellati@halloransage.com
(860)522-6103 – phone
(860)548-0006 - fax

Dated: April 1, 2014